UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE SPOT LLC,

       Plaintiff/Counter-Defendant,

v.

                                            Case No. 23-cv-11603
                                            Honorable Linda V. Parker

GPM EMPIRE, LLC,

       Defendant/Counter-Plaintiff,
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 26)

On or about May 3, 2023, Mike Spot LLC filed a Complaint against GPM Empire, LLC ("GPME") and Empire Petroleum Partners, LLC ("Empire") in the Circuit Court for Wayne County, Michigan. GPME removed the lawsuit to federal court on July 5, 2023. Mike Spot thereafter voluntarily dismissed its claims against Empire and filed an Amended Complaint against GPME, only, which contains the following counts: (I) "declaratory relief"; (II) breach of contract; and (III) violations of the Sherman Act, 15 U.S.C. § 1. (ECF No. 13.)

The matter is presently before the Court on GPME's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 26.) The motion is fully briefed. (ECF Nos. 27, 28.) Finding the facts and legal

arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

I. **Standard of Review**

A Rule 12(c) motion is subject to the same standard of review as a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.     Factual and Procedural Background

On March 27, 2019, Conner Petroleum ("Conner") and Empire entered a "Consignment Agreement" pursuant to which Empire agreed to supply motor fuel products, including gasoline, to Conner for resale to the public at a gas station located at 12517 Mack Avenue, Detroit, Michigan ("Premises"). (ECF No. 13-1.) The Consignment Agreement states that Empire will be the exclusive supplier of motor fuel products to the Premises and has the "sole discretion" to set the prices Conner could charge customers for those products. (*Id.* at PageID. 221 ¶¶ 2(a), (b).)

3

On or about May 26, 2020, Empire, Conner, and Detroit Fuel Stations, LLC ("Detroit Fuel") entered into an assignment agreement, pursuant to which Conner transferred its rights to the Consignment Agreement to Detroit Fuel ("First Assignment Contract"). (ECF No. 13 at PageID. 212 ¶ 6; ECF No. 1-2 at PageID. 47-52.) The First Assignment Contract contains the following "Release" provision:

> Assignor [Conner] hereby generally releases and discharges Distributor [Empire] and all of its officers, directors, members, shareholders, agents, representatives, employees, owners and attorneys, both present and past, of and from any and all claims, debts, liabilities, obligations, and causes of action of any kind or nature, whether known or unknown, based on, arising out of, or connected with, either directly or indirectly, any term provision, matter, fact, event or occurrence related to or contained in the Agreement or to any distributor and customer relationship among Assignor and Distributor.

(ECF No. 1-2 at PageID. 49 ¶ 8.) The First Assignment Contract also contains a provision, stating that "[t]his Assignment shall be binding on and inure to the benefit of the parties and their successors." (*Id*. at PageID. 50 ¶ 12.)

Empire assigned its rights, title, and interest in the Consignment Agreement to GPME on October 6, 2020. (*See* ECF No. 13 at PageID. 212 ¶ 8; *see also* ECF No.14-3.)

On November 23, 2022, GPME, Detroit Fuels, and Mike Spot entered into a "Second Assignment and Assumption of Consignment Agreement" ("Second Assignment Contract"). (ECF No. 13 at PageID. 212 ¶ 7; ECF No. 1-2 at PageID.

4

37-42.)  In the Second Assignment Contract, Detroit Fuel assigned its rights and obligations under the Consignment Agreement, as amended by the First Assignment Contract, to Mike Spot.  The Second Assignment Contract contains the same release provision as the first, except that Detroit Fuels was the assignor releasing and discharging GPME.  (ECF No. 1-2 at PageID. 39 ¶ 8.)

These various agreements provide that they are governed by Michigan law.

In Count I of its Amended Complaint, Mike Spot seeks a declaratory judgment that the Consignment Agreement "is not a true consignment agreement" but "a disguised resale price maintenance agreement[,]" which is "prohibited by the Sherman Act" and, therefore, "illegal" and "unenforceable."  (ECF No. 13 at PageID. 213 ¶¶ 11, 13.)  Mike Spot next alleges in Count II that GPME has breached the Consignment Agreement by setting the price of the petroleum products so high that Mike Spot "is no longer competitive in the market[.]"  (*Id.* at PageID. 216 ¶ 27.)  Mike Spot contends that, in doing so, GPME has breached its obligation to act honestly and in good faith when exercising its discretion to set those prices.

Lastly, in Count III, Mike Spot alleges that GPME has violated the Sherman Act, specifically 15 U.S.C. § 1, by agreeing with "Plaintiff's competitors, or some of them" to fix the prices to be charged for gasoline.  (*Id*. at PageID. 217 ¶ 34.)  Specifically, Mike Spot claims that GPME and Conner Fuel Mart, Inc. ("CFM")

5

entered into such an agreement. (*Id.* ¶ 35.) Mike Spot further claims that it has been harmed by this agreement because consumers are "seek[ing] fuel elsewhere, resulting in both fewer sales of gasoline and fewer sales of non-gasoline products." (*Id.* at PageID. 218 ¶ 36.)

## IV. GPME's Arguments

GPME asserts several arguments for why Mike Spot's claims are subject to dismissal. First, GPME maintains that the claims were released in the First Assignment Contract and Second Assignment Contract. Second, GPME argues that Counts I and III were filed outside the Sherman Act's four-year limitations period and are, therefore, time barred. GPME next argues that Mike Spot fails to allege sufficient facts to plausibly plead its Sherman Act claims (Counts I and III), and relatedly an antitrust injury to establish its standing, and its breach of contract claim (Count II).

### A. Whether the Claims Were Released

Basic rules of contract law apply when interpreting a release. *Soltis v. J.C. Penney Corp.*, 635 F. App'x 245, 248 (6th Cir. 2015) (citing *Radu v. Herndon & Herndon Investigations, Inc.*, 838 N.W.2d 720, 726 (Mich. Ct. App. 2013)). "The 'cardinal rule' in contract interpretation is to ascertain the parties' intent." *Id.* (quoting *Omnicom Grp., Inc. v. 880 W. Long Lake Assocs.*, 504 F. App'x 487, 490 (6th Cir. 2012) (quoting *McIntosh v. Groomes*, 198 N.W.2d 954, 955 (Mich.

1924)). Where the contract is unambiguous, the parties' intent is determined by the plain language. *Id.* (citation omitted); *see also Cole v. Ladbroke Racing Mich., Inc.*, 614 N.W.2d 169, 176 (Mich. Ct. App. 2000).

According to the plain, explicit, and unambiguous language of the release provision in the First Assignment Contract, Conner did not release the claims or causes of action of Detroit Fuel or any successor. Instead, Conner released only its claims and causes of action. *See Romska v. Opper*, 594 N.W.2d 853, 858 (Mich. Ct. App. 1999) (citations omitted) ("The intent of the parties to a release, *expressed in the terms of the release*, governs the scope of the release."); *see also Batshon v. Mar-Que Gen. Contractors, Inc.*, 624 N.W.2d 903, 905-06 (Mich. 2001) (holding that the release was limited to the express parties named therein); *Pitsch v. Citizens Ins. Co.*, No. 295485, 2011 WL 711130, at *2-3 (Mich. Ct. App. Mar. 1, 2011) (finding that the release was not broad in its statement of who was being released and, therefore, the release was limited to only those persons named). Similarly, the Second Assignment Contract plainly releases only the claims of the "Assignor"— that is, Detroit Fuel. The provision does not mention Detroit Fuel's successors or assignees.

The clear intent of the release provisions in these assignment contracts was to protect the "Distributor" (i.e., Empire and then GPME) from any claims by the "Assignor" (i.e., Conner and then Detroit Fuel) after the Consignment Agreement

7

was reassigned. It was not to preclude the "Assignee" (i.e. Detroit Fuel and then Mike Spot) from raising any claims that might arise during its subsequent business relationship with GPME.

### B. Whether the Sherman Act Claims are Time Barred

The statute of limitations for an action under the Sherman Act is four years. 15 U.S.C. § 15b. This period begins to run "each time a defendant commits an act that injures the plaintiff's business." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996)); *see also Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315 (6th Cir. 2007) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971)). "[T]he focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt acts." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 902 (quoting *DXS, Inc.*, 100 F.3d at 467) (emphasis removed).

The Consignment Agreement was assigned to Mike Spot only on November 23, 2022. GPME's alleged misconduct therefore could not have injured Mike Spot's business prior to that date. The present lawsuit was filed less than four years later. It is not time barred.

8

### C. Whether Mike Spot Pleads Sufficient Facts to Plausibly Allege that GPME Violated the Sherman Act

#### 1. Applicable Law

Section 1 of the Sherman Act declares in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. Not all agreements "in restraint of trade" are illegal, however. "Congress intended to outlaw only *unreasonable* restraints." *Valuepest.com of Charlotte, Inc. v. Bayer Corp.*, 561 F.3d 282, 286 (6th Cir. 2009) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)) (emphasis added).

A plaintiff alleging a violation of the statute must plead facts establishing "(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade." *Id.* (quoting *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002)). To satisfy the first element, the plaintiff "must provide 'evidence of a relationship between at least two legally distinct persons or entities.'" *Valuepest.com*, 561 F.3d at 286 (quoting *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 702 (4th Cir. 1991) (en banc)). Thus, "[u]nilateral action . . . does not suffice to implicate § 1." *Id.* Satisfaction of the second element depends on whether the restraint is one that is "deemed unlawful *per se*."

*Per se* restraints "must have manifestly anticompetitive effects . . . and lack any redeeming virtue[.]" *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551

9

U.S. 877, 886 (2007) ("*Leegin*") (internal citations and quotation marks omitted). "The classic examples are naked, *horizontal* restraints pertaining to prices or territories." *In re Cardizem DC Antitrust Litig.*, 332 F.3d 896, 907 (6th Cir. 2003) (collecting cases) (emphasis added); *see also Leegin*, 551 U.S. at 886 (internal citations omitted) ("Restraints that are *per se* unlawful include horizontal agreements among competitors to fix prices . . . or to divide markets[.]"). "Horizontal conspiracies involve agreements among competitors at the same level of market structure to stifle trade, such as agreements among manufacturers or distributors to fix prices for a given product[.]" *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1013 (6th Cir. 2005) (citations omitted). "*Vertical* restraints," in comparison, are "combinations of persons at different levels of the market structure, such as manufacturers and distributors[.]" *Com-Tel v. DuKane, Corp.*, 669 F.2d 404, 409 (6th Cir. 1982) (citing *United States v. Topco Assoc.*, 405 U.S. 596, 608 (1972)). Vertical price fixing agreements are not subject to the *per se* rule. *See Leegin*, 551 U.S. at 907.

Instead, "[v]ertical price restraints are to be judged according to the rule of reason." *Id*. Most restraints are evaluated using this rule. *In re Cardizem CD Antitrust Litig.*, 332 F.3d at 906 (citing *State Oil*, 522 U.S. at 10). This test requires a showing that: (a) the defendant's agreement, combination, or conspiracy "produced adverse anticompetitve effects . . . within relevant product and

10

geographic markets;" (b) "the objects of and conduct resulting from [the conduct] were illegal; and" (c) "the contract was a proximate cause of [the] plaintiff's injury." *Care Heating & Cooling*, 427 F.3d at 1014 (citing *Int'l Logistics Grp., Ltd. v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir. 1989)); *see also Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 664 (6th Cir. 2022) (quoting *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008)).

"[B]ecause the Sherman Act was intended to protect competition and the market as a whole, not individual competitors, the foundation of an antitrust claim is the alleged adverse effect on the market." *Care Heating & Cooling*, 427 F.3d at 1014 (internal citation omitted). Therefore, "[i]ndividual injury, without accompanying market-wide injury, does not fall within the protections of the [statute]." *Id*. "[A] complaint alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury." *Id.* at 1014-15 (citation omitted).

### 2. Analysis – Request for a Declaratory Judgment

In Count I of the Amended Complaint, Mike Spot seeks a declaratory judgment that the Consignment Agreement is an illegal resale price maintenance agreement, which is prohibited by the Sherman Act. The Consignment Agreement is a vertical agreement, as it is between parties at different levels of the market

structure: a distributor and a retailer. As such, it is subject to the rule of reason analysis.

As GPME argues, Mike Spot fails to allege facts to plausibly allege a market-wide injury. Instead, Mike Spot claims only an injury to its own business. Specifically, Mike Spot alleges that "[t]he Agreement prohibits Plaintiff from reducing prices to be competitive with neighboring stations" (ECF No. 13 at PageID. 214 ¶ 19) and that GPME "is setting the price of the petroleum products so high . . . that Plaintiff is no longer competitive in the market" (*id.* at PageID. 216 ¶ 27). Mike Spot may allege facts suggesting that *it* has been prevented from competing in the market due to GPME's control over pricing. However, as set forth above, individual injury is insufficient to state a claim. *See Care Heating & Cooling*, 427 F.3d at 1014-15 (finding that the plaintiff failed to demonstrate any adverse effect on the market as a whole when it alleged only that it was unable to secure a contract and had been prevented from expanding its business to compete with a competitor as a result of the defendants' agreement to not approve the plaintiff as an authorized dealer of one defendant's products); *Partner & Partner, Inc. v. ExxonMobil Oil Corp.*, No. 05-cv-74499, 2008 WL 896052, at * (E.D. Mich. Mar. 31, 2008) (concluding that the plaintiff, the owner of a gasoline station, failed to demonstrate a Sherman Act violation based on the agreement between the defendants to open a competing gas station near the plaintiff's station, where the

12

plaintiff "alleges only an injury to his business" in that the new gas station "caused him to lose customers and suffer monetary damages").

Mike Spot therefore fails to allege sufficient facts to show that the Consignment Agreement violates the Sherman Act and that it, therefore, is entitled to declaratory relief.

### 2. Analysis – Sherman Act Violation

In Count III of the Amended Complaint, Mike Spot alleges that GPME has agreed or conspired with "*Plaintiff's competitors*, or some of them . . . to set the prices at which gasoline will be sold." (ECF No. 13 at PageID. 217 ¶ 34 (emphasis added).) Mike Spot identifies only Conner Fuel Mart, Inc. ("CFM") by name, which operates a competitor gas station. (*See id*. ¶ 35.) This alleged agreement between GPME and CFM is, again, a vertical price fixing agreement and, as such, is not a *per se* violation of the Sherman Act. The rule of reason applies.

For the same reasons discussed above, Mike Spot fails to allege facts to plausibly plead the market injury necessary to state a violation of the statute. The only injury alleged are losses to Mike Spot because consumers are "seek[ing] fuel elsewhere, resulting in both fewer sales of gasoline and fewer sales of non-gasoline products." (*Id.* ¶ 36.) Thus, Count III of Mike Spot's Amended Complaint also is subject to dismissal.

### D. Whether Mike Spot Pleads Sufficient Facts to Allege a Plausible Breach of Contract Claim

In Count II of the Amended Complaint, Mike Spot alleges that, because the Consignment Agreement gives GPME the "sole discretion" to set the prices for the petroleum products sold at Mike Spot's gas station, GPME is obligated to exercise its discretion honestly and in good faith. By setting prices at an allegedly non-competitive rate, Mike Spot claims GPME breached that obligation.

Under Michigan law, a breach of the duty of good faith and fair dealing is not an independent tort cause of action. *See Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 186 (6th Cir. 2017) (citing *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279-80 (Mich. Ct. App. 2003)). Instead, Michigan contract law recognizes "the principle of good faith to evaluate a party's established contractual obligations or statutory duties[.]" *Id.* (citing *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 244-35 (Mich. Ct. App. 2013)).

The implied covenant of good faith and fair dealing does not attach, however, when the bargaining parties have "unmistakably expressed" their rights under the contract. *See Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990) (explaining that, under Michigan law, the obligation of good faith does not override express contract terms); *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 877 (5th Cir.), *cert. denied* 493 U.S. 978 (1989) (interpreting Michigan law to hold that the covenant of good faith does not apply

14

where the dealer agreement gave a franchisor "authority to approve or disapprove relocation [of] dealership] for its own reasons"); *Bushwick-Decatur Motors v. Ford Motor Co.*, 116 F.2d 675, 676-77 (2d Cir. 1940) (holding that, under Michigan law, the covenant of good faith and fair dealing is not implied where the parties' contract gave the franchisor unlimited discretion to terminate dealership); *Interquim, S.A. v. Berg Imports, LLC*, No. 21-10665, 2022 WL 790802, at * (E.D. Mich. Mar. 14, 2022) (quoting *Gen. Aviation*, 915 F.2d at 1041) (dismissing breach of implied covenant of good faith and fair dealing claim where the parties' contract gave one party the sole discretion to terminate their agreement, reasoning that if the other party "wanted provisions in their agreement addressing what would be necessary for termination . . . 'it could have insisted on the inclusion of those terms.'"). The duty to act in good faith only "arises when the parties have agreed to defer decision on a particular term of the contract" or when there is "a lack of clarity or an omission in the express contract." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) (citations omitted).

The Consignment Agreement expressly provides: "Seller will set the prices at which the Motor Fuel Products are to be dispensed by Manager, in Seller's sole discretion . . . ." (ECF No. 13-1 at PageID. 221 ¶ 2(b).) As the contract "expressly grants [GPME] complete discretion with respect to [pricing], the covenant of good faith will not be imposed to restrict the exercise of that discretion and thereby

15

override the contract." *Jacobson v. BH Assoc. Ltd. P'ship*, No. 222945, 2001 WL 738408, at *2 (Mich. Ct. App. June 29, 2001); *see also Stephenson*, 328 F.3d at 827 (quoting *Hubbard Chevrolet*, 873 F.2d at 877) (explaining that, "when the parties have 'unmistakably expressed their respective rights,' . . . the covenant does not adhere"); *Gen. Aviation*, 915 F.3d at 1041-42 ("General Aviation and Cessna both entered into this agreement freely. If General Aviation had wanted specific provisions in the contract concerning what cause would be necessary for termination of the agreement, it could have insisted on the inclusion of those terms."). Mike Spot's breach of contract claim is, therefore, subject to dismissal.

## V. Conclusion

For the reasons set forth above, the Court holds that Mike Spot fails to allege facts to plausibly plead its antitrust claims (Counts I and III), and its breach of contract claim (Count II) fails as a matter of law.

Accordingly,

**IT IS ORDERED** that GPME's motion for judgment on the pleadings (ECF No. 26) is **GRANTED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: March 18, 2025